by an empty chair. Judge Hug is unavoidably absent this morning. He will be listening to the tapes of the oral argument. So there is a third judge here. He's just not asking questions this morning. So we will ask questions for ourselves and for Judge Hug. We have read your briefs and we are looking forward to your arguments. The first case on the calendar is United States v. Mendoza. May it please the Court and Counsel, my name is Javier Torralocas. I am here on behalf of Isaias Mendoza. Your Honor, this Court has to decide a very narrow issue today, and that is whether Mr. Mendoza presented sufficient facts to constitute a fair and just reason to allow him to withdraw his guilty plea. This Court does not have to decide if he has a meritorious entrapment by estoppel defense at the district court level, because there just isn't a sufficient record for that determination at this point. What happened is Mr. Mendoza entered a guilty plea, Your Honor, as to illegal reentry after he was taking the plea, that he was actively misled by the INS, presumably unofficial, because when he was deported, he was told that if he stayed out five years after his deportation, he could return without the Attorney General's permission. Now, how do we know he was told? At the plea colloquy, he says something like, they said, but we don't know who they are, right? But he does also say, Your Honor, when they deported me, so I take that in conjunction, they said that it was officials, either the person who deported him or even the immigration judge. It seems that it was more than one person. And you're right, we don't really know the exact person that told them that. It might even have been his lawyer. I mean, they, we don't know, right? Okay. Well, he doesn't say my lawyer. He says when they deported me, his lawyer did not deport him, so that leads me to believe that it wasn't. Might be a governmental official of some kind. Some kind of governmental official. He tells the judge that, and the judge addresses it only by saying to counsel, did you discuss this with him, and is it a defense? And then it's left alone. And the counsel says, I'm satisfied that this is not a good defense. Well, he says, yes, I've discussed it with him, and yes, he does say he doesn't believe it's a defense. The counsel says he doesn't believe it's a defense.  And Mendoza, of course, is not capable of evaluating that on his own. Well, not at this point, Your Honor. He is just relying on what he's told, and he relies on counsel at this point, enters the guilty plea. And of course, then he begins some pro se litigation, and he says, my counsel let me down, basically, because he didn't recognize this defense to illegal reentry as well as others. Eventually, he is successful in getting a resentencing after much pro se litigation. And the judge allows him a resentencing. He doesn't limit it in any way in his order, saying, you know, we're only going to consider that you should get a lower sentence, et cetera. He just leaves it wide open for sentencing. And very curiously, assigns a new counsel because he made claims in his pro se litigation that counsel that represented a change of plea was not effective and did not recognize defenses, including this entrapment by estoppel possibility. Can I ask you this? Your client's claim depends, I think, in substantial part on whether or not the estoppel argument, in fact, is of good defense. How do you distinguish the Ramirez Valencia case, which had just come out at the time of this plea colloquy? And it was not an old case, but it was out. Well, I think that he I think Ramirez Valencia doesn't control this case because that case involved with probably what the second case on the calendar involves, a fully litigated entrapment by estoppel defense in the district court below. In other words, in Ramirez Valencia, a motion to dismiss was filed saying this is my defense and you should just dismiss the indictment. And each side presented everything that was available to support the defense. That's not the case here. And that's not really the issue here. The issue is what constitutes a fair and just reason? And what Mr. Mendoza did is not only tell the magistrate judge, but later on he mentioned to the district court, through his new lawyer, that what we want to rely on is this this this misinformation in the form that says you can return after five years if you stay out of the country. And he also tells several times he tells the judge this they have about three hearings total. Now, the government did not argue Ramirez Valencia below at all. The first time that they bring it up is now on appeal. The government never argued below that entrapment by estoppel is not available because we have a form here that says X, Y and Z that was never presented. So it's possible that Mr. Mendoza's counsel, when he says we don't have a good defense, had never heard of Ramirez Valencia. Indeed, maybe the government hadn't either. And they finally figured out on appeal. They finally get around to reading the case. Well, I think at least second counsel for for Mr. Mendoza had heard of because he does he says the magic words, the estoppel theory. I see. So he he had heard of it. Contention is that first counsel hadn't heard of it and didn't know that it existed. So so he's so he's he's accurately forecasting our law. Well, I don't know about that, but certainly I would urge you, I would urge the court to look at the Udawu, which is the district court, the District of Columbia case. That's more that's more like this case in the sense that it actually involves a defendant who's saying a form from the INS misled me about this five year rule. I'm asking to withdraw. And there's some striking similarities. For example, both defendant Mr. Mendoza and Mr. Udawu let the district court know that we're concerned about this five year rule. We think it's a defense and counsel for them at the change of plea just fails to recognize it. Yeah. Now, what are you asking for? Meaning, are you asking for a remand so that we can have testimony from Mr. Mendoza, for example, who who told you this so we can just explore a little bit more? That's to say one of the differences between your case and Ramirez Valencia is that the there was no talk there about I was told by anybody. And of course, there's another distinction you've already raised that Ramirez Valencia was just a question. You can't charge me in the indictment. They hadn't put on the defense and so on. Do you want a hearing back on remand that says, hey, OK, who told it to you? Would that make a difference? The remedy that I suggest that is appropriate is for him to be allowed to withdraw his plea because he presented enough. The five year rule and the ambiguity around it is sufficient to constitute a fair and just reason. Are you relying then on the notice and the form that he got? That in combination, your honor, with what the official allegedly told him, well, as Judge Fletcher is pointing out, though, we don't know who that was or when it was said, shouldn't there be a hearing on that before withdrawals allowed? I think that obviously the record is flimsy, and that's what it always says in their decision, that the record is too it was too flimsy to to decide whether he had merits as to the entrapment by entrapment by estoppel defense. See, if you're relying on the form, we can decide that, can't we? We know we have it before us. Well, you do not. I submit you do not have the form because none was presented to the district court. What government is suggesting is this the same form as Ramirez Valencia, and that's just not something that is allowable because they didn't present it below. So you can't guess at what the form is. And as it points out, there are several forms that have been used by the INS. Unless you have the actual form. Well, but aren't you required to show an affirmative misrepresentation in the form? That in the form, if it tells you that, you know, we don't know what form it is, but yes, the requirement for entrapment by estoppel is affirmative misrepresentation. And you're saying we can't consider that because we don't have the form. You don't have the form and you don't have any testimony. Yeah, but I think you're supposed to give us the form. Well, I think that if I were you, I'd stipulate for present purposes, there's probably the same form as Ramirez Valencia. Otherwise you've got no form. Well, but we have the testimony from Mr. Ramirez. I mean, I'm sorry, from Mr. Mendoza saying this is what I was told. This is what the government misrepresented to me. And I relied on that. And unless they rebut it somehow, that's all the record that you really have. I suggest that you can't do what the court is suggesting is to say this is the form, because we really don't know that. OK, you know what I'd like to do? Let's hear from the other side and we'll give you a little time on rebuttal. Thank you. Thank you. Good morning. May it please the court, I'm Joseph Kohler and I represent the United States. Your Honor, you hit the nail on the head in this case, and that is the burden of proof. In Talmadge, Brebner and Ramirez Valencia, this court placed the burden of proof squarely on the defendant. Not only is the burden of proof for the for the entrapment by estoppel defense. Well, if we hit the nail on the head, you're about to be the nail. What in the world are you guys putting this in the form for? And what conceivably can you mean when you say you can't return before five years of a lapse without permission of the attorney general? I mean, what are you talking about? That form concededly had problems when the law still using. Are you still using the form? No, that form is not worded that way anymore. That form was changed years ago. But that's not in the record in this case, unfortunately. And why was the form so constructed at that time? What was it referring to? It was referring to the state of the law probably about 15 to 20 years ago before the way the statute evolved. You have the Anti-Drug Abuse Act of 1988, which created the term aggravated felony. Then you had Im Act in 1990 and you had various other amendments to the statute. And it took time for that form to catch up to the statute. There's no question that that INS, as it then existed, took too long to get that form amended. So the form, the form that you say that in your papers, you're willing to stipulate that this was the form. So I think you've taken care of his burden of proof problem, I guess, because you stipulated the same form. It might or might not have been. But for our purposes, we at least have that same form as a premise for the purpose of argument. Correct. No, I think you can. Didn't you concede it? I'm sorry. Didn't you concede it for purposes of this case? Not just for purposes of argument. Certainly. For the purpose of this case, the government is willing to assume that it's the same form. And the reason why is because this court has already held as a matter of law that that form is insufficient to carry the defendant's burden to show affirmative misleading on the part of the INS. Well, are you relying on Ramirez Valencia for that? Absolutely. But Ramirez Valencia says the only thing that Ramirez Valencia says you can charge. It doesn't say you can't present the defense, and it certainly doesn't say the defense is inadequate when accompanied by clear and convincing testimony. I'm now, of course, making this up that not only was there the form, but the INS lawyer and the IJ informed me. See that five years after five years? It's OK. Now, if that were the case, that's a different case than Ramirez Valencia. I would disagree on a number of points. Number one, the defendant never specified who they was. I understand. They very well made up that part about, you know, certainly they very well may have been the form itself. He got the form. He read it. He confirmed he assumed from the form that they, the INS, were telling him that he could come back after five years. But I also would disagree about the. Well, wait a minute. OK, this is the defendant. When I was deported, I was just told to stay out five years and come back. They didn't tell me that I had they didn't tell me I had to. Well, we all speak imprecisely and this may be imprecise talk, but it sure doesn't say I read the form and it tells me it says they didn't tell me. That is correct, that the defendant had the burden to come forward and show who they were. And the fact is the defendant, you know, the passage you're quoting comes from this plea colloquy that occurred on May 18th of 2000, two and a half, nearly three years later, in January of 2003, the defendant had three different opportunities at motions on his motion to with hearings on his motion to withdraw his guilty plea. December 9th of 2002, January 6th of 2003, January 21st of 2003, three different opportunities the district court gave him to clarify who they were and to set forth an evidence to the district court. The defendant did not do that. Now, Ramirez Valencia and this court in Bredner held that the defendant had to come forward with evidence of affirmative misleading before the defendant could even present the defense to the jury. The defendant never came forward with such evidence. This is two and a half years after he's entered his guilty plea, and he still has not come forward with that evidence. So the defendant never did carry his burden of proof. So your argument is he had a chance to have his evidentiary hearing as to who might have told him what, but he just didn't do it. Three chances. Yes, he had those chances and he never did. So and this is far different from the case in Talmadge. In Talmadge, the defendant had an affirmative misrepresentation by someone that this court held to be an agent of the government. There was no dispute about that evidence. In addition, there was no dispute that the defendant had external advice that he was given by parties who were not agents of the government, but the advice of those parties made his reliance on the misrepresentation by the gun dealer reliable. In this case, we have no evidence at all, number one, of a sufficient affirmative misrepresentation, as this court held in Ramirez Valencia. That form in itself is not sufficient evidence of an affirmative misrepresentation, at least not sufficient to prevent a charge. You can go forward with the indictment. I would I read Ramirez Valencia as precluding the defense from being presented at all in court unless the defendant can come forward with an unequivocal affirmative misrepresentation. I think that's a possible reading of the case. Yeah. OK. And in this case, the defendant has not come forward with such. The 294 form unquestionably directed the defendant to Section 1326 of Title eight, which put the defendant on notice that coming back at any time without permission is a violation of that statute. Your opponent seems to be arguing that we can infer from the statement they made this representation that it was a governmental official. Can we do that? I don't think you can, Your Honor. And the reason why is because the burden is on the defendant. It's not for this court to infer what the evidence might have shown. It is for the defendant to come forward with evidence of an unequivocal misrepresentation on the part of the government and reasonable reliance on that misrepresentation. The defendant fails on both of those counts. And something else to keep in mind here, the defendant and this is in the government's brief, when he was arrested, he admitted that he had entered the United States illegally prior to being apprehended in this case. And if the defendant truly were relying on a misrepresentation from the government that he was allowed to come back after five years, he would have come to a port of entry, said, I've waited my five years and now I'm here. I want to come back to the United States. He did not do so. So his own conduct belies his claim that he was affirmatively misled into coming back after five years. Well, this may be cutting it too fine and attributing a sort of a fine grained legal analysis to someone who's not legally trained. But maybe he thought, I'll be punished for illegal immigration less because of this. I mean, he knew he was coming across the border illegally. But the reason he's being punished so heavily is that he has been deported previously, not just because it's illegal immigration. So maybe he thinks, OK, the deportation is wiped off the books after five years and the penalty is now less. If that were the case, it was still the defendant's burden to come forward with testimony, documents, affidavits, whatever he could come forward with to show that this is what happened. He had numerous opportunities to do so and he didn't. And the defendant not only had the burden to show that for this defense, he had the burden to show a fair and just reason to withdraw his guilty plea. He did not come forward with any evidence or testimony in support of either of those burdens. Looking back even further, this all arose from the defendant filing a 2255 petition after he was originally sentenced. He filed that 2255 petition. He never raised this claim in his petition. He waited until almost another full year later in approximately June of 2002 to mention this claim for the first time. And that was in a reply to a response to his objection to the magistrate's report and recommendation. So this is well after the one-year Edpa bar, the one-year bar in Edpa had passed for bringing this claim. Then he files after the court grants a resentencing, he files the motion to withdraw his plea. So at this point, it has become an end run around what the original purpose of the grant of this 2255 was, was simply to reduce his criminal history category. I'm intrigued by the suggestion at the end of your brief that if we were to allow him to withdraw his plea, that should be conditioned upon his surrendering himself. He's now in Mexico, surrendering himself to the United States authorities for trial. Do you have any other authorization? What was the legal basis for that intriguing suggestion? The fugitive disentitlement doctrine is one way of looking at it. The defendant, if he wants to gain relief from this court and be allowed to withdraw his plea, he has to come into court and actually withdraw his plea and face a trial on the charges, present the defense to the court. It makes no sense. You can't do it through a lawyer. You can't do it by remote control. And that is why I put that suggestion in the end of the brief. I understand the court might not agree with that suggestion, but I thought it appropriate. Okay. Do you have any other questions for me? Thank you for your argument. Thank you. Why don't you take a minute? Excuse me? Why don't you take a minute for rebuttal? Oh, thank you. The only thing I want to address, Your Honor, is that the court only needs to decide whether there's a fair and just reason to allow Mr. Mendoza to withdraw his plea. The merits of whether he would succeed with this entrapment by estoppel defense, I don't believe, are before the court at this time. You need a better record and a better opportunity to litigate it below. And Ramirez Valencia is different in that respect that the record is made. Well, and how come we don't have a better record already? I mean, I think you might have had a chance to say, put on testimony, here's who said what to me. The lawyer can always be better, obviously, Your Honor, but I think you have a sufficient record to constitute a fair and just reason. And that is what is out there to say without remand. That's correct. That that it always says that just the confusion about the five year rule because of the former and presumably because of an official constitutes a sufficient reason or fair and just reason to allow withdrawal because it calls into question the whole plea. OK, thank you. Thank both of you for your very helpful argument in this quite interesting case. The case of United States versus Mendoza is now submitted for decision. The next case on the calendar is the United States versus and I'm not sure I'm pronouncing it right. Batterji. May it please the court. Good morning, Lawrence Kasten on behalf of the appellant.
judges: Hug, Alarcon,w. Fletcher